No. 18-15241

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RAMON DY,

Plaintiff-Appellant,

v.

BORU NALE, ET AL.,

Defendants-Appellees.

Appeal from a Decision of the
United States District Court for the District of Arizona
No. 2:16-cv-03924-ROS
Hon. Roslyn O. Silver

**APPELLANT'S OPENING BRIEF**

Carter C. White, State Bar No. 164159
UC Davis Civil Rights Clinic
One Shields Avenue, Bldg. TB-30
Davis, CA 95616-8821
Telephone: (530) 752-5440
ccwhite@ucdavis.edu

*Counsel for Plaintiff-Appellant,*
*Ramon Dy*

# Table of Contents

Introduction…………………………………………………………………1

Jurisdictional Statement …………………………………………………….2

Statutory Authorities……………………………………………….. 2

Issues Presented………………………………………………….. 2

Statement of the Case ………………………………………………… 3

    1.   Factual Allegations…………………………………………… 3

    2.   Procedural History………………………………………….. 4

Summary of the Argument……………………………………… 5

Standards of Review………………………………………….. 5

Argument……………………………………………….. 6

    The District Court Erred in Failing to Enforce the ICC………………… 6

    The Magistrate Judge Erred in Changing Venue to Arizona…………… 11

    The Magistrate Judge Lacked Jurisdiction to Change Venue…………… 13

Conclusion………………………………………………… 14

Statement of Related Cases…………………………………………15

Certificate of Compliance………………………………………15

Certificate of Service……………………………………….. 16

Statutory Addendum……………………………………….. 17

# Index of Authorities

Cases

*Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031 (9th Cir. 2011) ......6

*Austin v. Terhune*, 367 F.3d 1167 (9th Cir. 2004) ……………………………12

*Barrett v. Peters*, 360 P.3d 638 (Ore. App. 2015) ……………………………… 8-9

*Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010) …………………………………… 11

*Boatright v. Director, Dept. of Prisons*, 849 P.2d 274 (Nev. 1993) …………….. 9

*Cooper v. Sumner*, 672 F.Supp. 1361 (D. Nev. 1987) …………………….… 10

*DeLancie v. Superior Court*, 647 P.2d 142 (Cal. 1982) ………………….....… 10

*Erickson v. Pardus*, 551 U.S. 89 (2007) ……………………………………….. 11

*Erlin v. United States*, 364 F.3d 1127 (9th Cir. 2004) …………………………… 5

*Flam v. Flam*, 788 F.3d 1043 (9th Cir. 2015) ……………………………………13

*Grant v. Swarthout*, 862 F.3d 914 (9th Cir. 2017) ……………………………... 11

*Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883 (9th Cir. 2017) ………….… 5

*In re Harrell*, 570 P.2d 640 (Cal. 1970) ………………………………………... 10

*Houston v. Lack*, 487 U.S. 266 (1988) ……………………………………….. 4

*Hundley v. Hobbs*, 456 S.W.3d 755 (Ark. 2015) ……………………………….. 9

*Idaho v. Coeur D'Alene Tribe*, 794 F.3d 1039 (9th Cir. 2015) ………………….. 5

See *Irwin v. Mascott*, 370 F.3d 924 (9th Cir. 2016)…………………………… 5

*Jackson v. District of Columbia*, 89 F.Supp.2d 48 (D.D.C. 2000)
    *vacated in part on other grounds*, 254 F.3d 262 (D.C. Cir. 2001) ……… 9

*Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000 (9th Cir. 2011) ………………… 5

*Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004) ………………………………… 6, 7

*Kimes v. Stone*, 84 F.3d 1121 (9th Cir. 1996) ……………………………….. 7

*Lerma v. Lewis*, 921 F.Supp.2d 949 (N.D. Cal. 2013) ………………………… 11

*Maldonado v. Harris*, 370 F.3d 945 (9th Cir. 2004) ……………………………. 6

*Marks v. Parra*, 785 F.2d 1419 (9th Cir. 1986) ……………………………….. 6

*Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) …………………. 13

*Northwest Airlines, Inc. v. Camacho*, 296 F.3d 787 (9th Cir.2002)……………… 5

*Payton v. Saginaw County Jail*, 743 F.Supp.2d 691 (E.D. Mich. 2010) ……..… 14

*Pavao v. Unified CCR Partners*, 934 F.Supp.2d 1238 (S.D. Cal. 2013) ……….. 14

*Pederson v. Greenpoint Mortg. Funding, Inc.*,
    900 F.Supp.2d 1071 (E.D. Cal. 2012) …………………………………… 11

*Pryor v. Brennan*, 914 F.2d 921, 926 (7th Cir. 1990) ……………………………. 9

*TwoRivers v. Lewis*, 174 F.3d 987 (9th Cir. 1999) ………………………………. 7

*Wallace v. Kato*, 549 U.S. 384, 387 (2007) ……………………………………… 6, 7

*Williams v. King*, 875 F.3d 500, 501 (9th Cir. 2017) ………………………….. 13


Statutes, Rules, and Other Authorities

28 U.S.C. § 1291 …………………………………………………………….. 2

28 U.S.C. § 1331 …………………………………………………………….. 1

28 U.S.C. § 1332………………………………………….. 1

28 U.S.C. § 1343………………………………………….. 1

28 U.S.C. § 1367………………………………………….. 1

28 U.S.C. § 1391(b) ……………………………………… 12

28 U.S.C. § 1406(a) ……………………………………… 4, 12

28 U.S.C. § 1915A(a)…………………………………….. 4

28 U.S.C. § 2107(a)………………………………………. 2

Ariz. Rev. Stat. § 12-542 ………………………………… 6

Cal. Penal Code § 11189, Art. I. ………………………….. 7-8

Cal. Civ. Proc. Code § 335.1 …………………………….. 6

Cal. Civ. Proc. Code § 352.1 …………………………….. 7

Rule Fed. R. App. Proc. 4(a)(1) ………………………….. 2

Fed. R. Civ. Proc. 54 ……………………………………. 2

14D Wright, Miller & Cooper, Fed. Prac. & Proc. Juris. § 3806 (4th ed.) ….12, 13

## Introduction

Ramon Dy is a California state prisoner who was transferred to a prison in Arizona pursuant to the Interstate Correction Compact (ICC). While in Arizona, prison medical officials failed to treat his increasingly severe symptoms, failing to diagnose a brain tumor for at least seven months. After he was returned to California to have the tumor removed, he continues to suffer lifetime disability including partial paralysis.

The ICC provides that transferred prisoners retain the same rights they would have had in their sending state, and Plaintiff's lawsuit would have been timely where he initially filed it in California due to statutory tolling. But a California Magistrate Judge exceeded his authority and erroneously transferred the case to Arizona, where the district court failed to apply the plain language of the ICC and dismissed the action as time barred. This Court should reverse one or more of the errors committed by the courts below.

## Jurisdictional Statement

(a)     The district court had jurisdiction of this prisoner civil rights action under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The district court had jurisdiction under 28 U.S.C. § 1367 of the Plaintiff's supplemental state law claims. The district court also had jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) because the Plaintiff is a citizen of

California (or is treated as such under the venue statute) and Defendants are all citizens of other states.

(b)   The district court's judgment dismissed all of Plaintiff's claims and is final under Rule 54, Fed. R. Civ. Proc. This Court has jurisdiction under 28 U.S.C. § 1291.

(c) This is an appeal from the district court's final judgment of January 18, 2018. ER 4; ECF No. 53. The judgment is based on the district court's order of the same date, granting Defendants' motion to dismiss on the grounds that Plaintiff's action is barred by the statute of limitations. ER 5; ECF No. 52. Plaintiff filed his notice of appeal on February 13, 2018. ER 3. The appeal is timely under 28 U.S.C. § 2107(a) and Rule 4(a)(1), Fed. R. App. Proc.

## Statutory Authorities

All relevant statutory authorities appear in the addendum to this brief.

## Issues Presented

1.   Did Plaintiff Ramon Dy's transfer to Arizona under the Interstate Corrections Compact deprive him of the right to statutory tolling under California law, where the ICC provides that a prisoner must be given all rights he would have received in the sending state?

2.   Was venue proper in California where this action was originally filed, such that California statutory tolling applies?

3. Did the Magistrate Judge lack jurisdiction to change venue to Arizona?

**Statement of the Case**

1. Factual Allegations

Plaintiff Ramon Dy is a California state prisoner. In 2013, Dy was incarcerated at La Palma Correctional Center (LPCC) in Arizona pursuant to the Interstate Corrections Compact (ICC). ER 7, 28. Over the course of approximately seven months, Dy complained to his health care providers about a series of increasingly serious symptoms including muscle spasms, tremors, seizures, numbness, and weight loss. ER 29, 32. Defendant Spizzirri, a physician's assistant, failed to diagnose Dy's brain tumor during this time, and failed to elevate Plaintiff's level of care in a timely manner. ER 5, 29, 32-34. Despite the recommendation by Plaintiff's treating physician Dr. Nale, Defendant Regional Medical Director Dr. Ivens improperly denied a neurological consultation to Plaintiff. ER 6, 32. After this denial, Dr. Nale failed to order another consultation for two months, despite Dy's continuing and increasingly severe symptoms. ER 34. The three individual Defendants were employed by Defendant Corrections Corporation of America (CCA). ER 36.

Plaintiff was diagnosed with a brain tumor on November 13, 2013. ER 6, 33. He was immediately transferred back to California, where he underwent surgery to

remove the tumor, and he suffers permanent disability including partial paralysis as a result of Defendants' conduct. ER 33, 42.

2.    Procedural History

Plaintiff filed his Complaint on September 27, 2016, by giving it to prison officials for mailing. ER 6 (citing "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 276 (1988)). Plaintiff, who at that time was incarcerated in Chowchilla, California, filed this action in the Eastern District of California. ER 39. A United States Magistrate Judge purported to transfer the case to the District of Arizona on November 10, 2016, under 28 U.S.C. § 1406(a) for having "been filed in the wrong district." ER 37-38.

Plaintiff filed his Second Amended Complaint on March 6, 2017. ER 26. Pursuant to 28 U.S.C. § 1915A(a), the district court screened this Complaint. ER 14. In that order, the court dismissed Plaintiff's Eighth Amendment medical claims against Defendants CCA and Nale without prejudice. ER 23. Plaintiff was allowed to proceed on his Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Ivens and Spizzirri, and on his state law medical malpractice claims against all four Defendants. Id.

Defendants moved to dismiss based on statute of limitations. ER 5 (citing ECF Nos. 20, 23, 31); 45, 46. The district court granted the motion and entered judgment in Defendants' favor. ER 4, 13. Plaintiff timely appealed. ER 3.

## Summary of the Argument

The district court erred in dismissing Plaintiff's claims as barred by limitations. The district court stated that Plaintiff is asserting "a claim under Arizona law against Arizona-based defendants," ignoring Plaintiff's federal civil rights claims. The district court refused to recognize that California statutory tolling is a "right" to which Plaintiff is entitled by virtue of the Interstate Corrections Compact.

## Standards of Review

This Court's review of a district court's dismissal on statute of limitations grounds is de novo. *Erlin v. United States*, 364 F.3d 1127, 1130 (9th Cir. 2004). "A ruling on the appropriate statute of limitations is a question of law also reviewed de novo." *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1005 (9th Cir. 2011) (citing *Northwest Airlines, Inc. v. Camacho*, 296 F.3d 787, 789 (9th Cir.2002)). The Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the nonmoving party. *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 886–87 (9th Cir. 2017).

A district court's venue ruling is reviewed de novo. *Idaho v. Coeur D'Alene Tribe*, 794 F.3d 1039, 1042 (9th Cir. 2015). Whether a Magistrate Judge has jurisdiction is also reviewed de novo. See *Irwin v. Mascott*, 370 F.3d 924, 929 (9th Cir. 2016).

## Argument

I.  The District Court Erred in Failing to Enforce the ICC.

A. The law and applicable limitations periods.

The district court held that Plaintiff's claims were untimely because Arizona's statutes of limitations (which it termed "Arizona's timing rules") apply. ER 12. This was error because under the plain language of the Interstate Corrections Compact, Plaintiff is entitled to statutory tolling under California law.

In a section 1983 civil rights action, federal courts apply the statute of limitations for personal injury actions of the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011). In California and Arizona, the relevant personal injury limitations period is two years. Cal. Civ. Proc. Code § 335.1; Ariz. Rev. Stat. § 12-542; see also *Maldonado v. Harris*, 370 F.3d 945, 954-55 (9th Cir. 2004) (California); *Marks v. Parra*, 785 F.2d 1419, 1420 (9th Cir. 1986) (Arizona).

In determining a state's statute of limitations for personal injury actions to apply in section 1983 cases, the federal courts apply "the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citation omitted). By statute, California extends the statute of limitations by

two years for prisoners imprisoned "for a term less than for life." Cal. Civ. Proc. Code § 352.1; *Jones v. Blanas*, 393 F.3d at 927. Plaintiff was sentenced to a term less than life (18 to 24 years). ER 28. Arizona does not allow tolling for prisoners. *TwoRivers v. Lewis*, 174 F.3d 987, 990 (9th Cir. 1999) (Arizona amended former statute deleting tolling provision for prisoners).

Although the courts borrow from state law to determine the statute of limitations in a section 1983 case, federal law governs when these claims accrue. *Wallace v. Kato*, 549 U.S. at 388. Under federal law a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Plaintiff's claims accrued on November 13, 2013. ER 9, 33. The filing date of September 27, 2016, is more than two years but less than three years after the accrual date. Thus, unless he is entitled to statutory tolling under California law, Plaintiff's claims are barred.

B. Plaintiff is entitled to California statutory tolling by virtue of the ICC.

The district court accepted as true Plaintiff's allegation that his transfer from California to Arizona was pursuant to the Interstate Corrections Compact (ICC). ER 7, 28. The relevant part of the ICC provides:

> The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

Cal. Penal Code § 11189, Art. I. The district court rejected Plaintiff's contention that statutory tolling under California is a "legal right," as well as the assertion that under the plain language of the ICC, Plaintiff is entitled to that right. ER 12.

> Plaintiff is not attempting to assert a claim under California law. Instead, he is asserting a claim under Arizona law against Arizona defendants. His attempt to invoke to invoke California's limitations period or tolling statute is solely to preserve those claims under Arizona law.

ER 12. In reaching this conclusion, the district court ignored Plaintiff's Eighth Amendment medical care claims against Defendants Ivens and Spizzirri. At a minimum, these claims should survive.

But the ICC's reach is not limited to claims under federal law, and the district court was wrong in dismissing Plaintiff's state law claims as well. In *Barrett v. Peters*, 360 P.3d 638 (Ore. App. 2015), the court interpreted and enforced an ICC provision similar to the one at issues here in holding that Oregon prisoners who were transferred to Florida did not give up their right to be incarcerated under conditions that meet Oregon constitutional standards:

> That means that, if the Oregon Constitution affords an Oregon inmate the right to certain conditions of confinement, then the inmate does not lose those rights by virtue of a transfer to a state that does not recognize the same rights. Thus, for example, if the Oregon Constitution protects plaintiffs right to a religious-based beard and hairstyle—and, at this point in time, the director has not disputed that it does—plaintiff still has that right, even though he is incarcerated in Florida. To hold otherwise would, in effect, convert the ICC into a mechanism for subverting the requirements of our own constitution, enabling Oregon officials to transfer Oregon inmates out of state to

avoid complying with the legal standards for confinement set by the
Oregon Constitution.

360 P.2d at 642. A similar ICC provision was enforced by the Supreme Court of

Nevada in *Boatright v. Director, Dept. of Prisons*, 849 P.2d 274 (Nev. 1993), to

allow a Nevada prisoner serving time in Arizona to challenge a condition of

confinement that he alleged precluded him from parole consideration (certification

that sex offender was under observation while confined in an institution of the

department of prisons and is not a menace to the health, safety or morals of others).

And the Arkansas Supreme Court enforced a similar ICC provision to allow one of

its state's prisoners serving time in New Jersey to file a state habeas writ

challenging a mandatory life without parole sentence assessed when the petitioner

was a juvenile. *Hundley v. Hobbs*, 456 S.W.3d 755 (Ark. 2015). The fact that state

courts are enforcing the ICC to guarantee rights provided by their states to their

state's prisoners supports the district court doing the same thing here.

Federal courts have also enforced similar ICC provisions to guarantee rights

that prisoners retained from their sending states. See, e.g., *Pryor v. Brennan*, 914

F.2d 921, 926 (7th Cir. 1990) (District of Columbia prisoners transferred to state

facilities under ICC were entitled by Article IV(e) to accumulate good time credits

in  accordance with District of Columbia rules); *Jackson v. District of Columbia*,

89 F.Supp.2d 48, 55 (D.D.C. 2000) (religion-based challenge to grooming

requirements), *vacated in part on other grounds*, 254 F.3d 262 (D.C. Cir. 2001).

The right of Plaintiff here to bring his lawsuit is on equal footing with the rights of the prisoners in these cases.

*Cooper v. Sumner*, 672 F.Supp. 1361 (D. Nev. 1987) is also instructive. In that case a Nevada prisoner was transferred to Arizona pursuant to the Western Interstate Corrections Compact, and while incarcerated in Arizona sued both Nevada and Arizona prison officials regarding his transfer, access to the courts, and other constitutional violations. The district court permitted plaintiff to amend his complaint to show that his claims were not barred under Nevada's extended three-year limitations period. 672 F.Supp. at 1365.

Statutory tolling is a right, and the district court erred in not accepting it as one. Until 1968, under California law the civil rights of prisoners were suspended under the medieval doctrine of "civil death." See *DeLancie v. Superior Court*, 647 P.2d 142, 145-46 (Cal. 1982). The statute that repealed this doctrine was subsequently amended in 1975 to include a right "to bring civil suits." *Id*. at 145. The California Supreme Court indicated that the statute was "to be viewed as a 'prison bill of rights' setting forth certain fundamental guarantees which are to be protected against arbitrary infringement." *In re Harrell*, 570 P.2d 640, 655 (Cal. 1970). If the statute granting the right to bring a civil suit is viewed as a prison bill of rights, the subsequent statutory enactment extending the time period for bringing such an action should be similarly construed.

Statutory tolling should be considered a right in a similar fashion to equitable tolling. This Court and the district courts characterize equitable tolling as a right. See, e.g., *Grant v. Swarthout*, 862 F.3d 914, 916 (9th Cir. 2017) ("This case involves a prisoner's right to equitable tolling . . . ."); *Bills v. Clark*, 628 F.3d 1092, 1094 (9th Cir. 2010) (Magistrate Judge ordered evidentiary hearing on habeas petitioner's "mental capacity and his right to equitable tolling."); *Lerma v. Lewis*, 921 F.Supp.2d 949, 957 (N.D. Cal. 2013) (habeas petitioner asserted "right to equitable tolling"); *Pederson v. Greenpoint Mortg. Funding, Inc*., 900 F.Supp.2d 1071, 1078 (E.D. Cal. 2012) (deed of trust borrowers "asserted their right to equitable tolling" in opposition to motion to dismiss). There is no principled reason to consider statutory tolling in a different light than equitable tolling for this purpose.

The district court failed to apply the plain language of the ICC provision granting a transferred prisoner the same rights he would have retained in the sending state. This Court should reverse the district court's ruling and remand the case for further proceedings as Plaintiff is entitled to statutory tolling under California law by virtue of the ICC.

II.     The Magistrate Judge Erred in Changing Venue to Arizona.

Pro se pleadings must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Specific legal theories need not be pleaded so long as sufficient

factual averments show that the claimant may be entitled to some relief. *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

Broadly construed, Plaintiff's original complaint sought to include claims for medical negligence as well as medical claims under the Eighth Amendment. See ER 41 (medical staff showed "benign" as well as deliberate indifference). This complaint can also be construed as naming CCA as a defendant responsible for the negligence of it agents. See ER 39 (naming "La Palma Correctional Center" as a Defendant in the caption).

The Magistrate Judge's transfer order under 28 U.S.C. § 1406(a) was in error. The venue statute in effect at the time provided that a civil action may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Subsection (2) of this statute is referred to as "transactional venue." 14D Wright, Miller & Cooper, Fed. Prac. & Proc. Juris. § 3806 (4th ed.). Since there can be more than one district in which a substantial part of the events giving rise to a claim occurred, this subsection may be the basis for venue in multiple districts. *Id*. Neither "residential" (subsection (1) of the statute) nor

transactional venue is favored other the other, "the plaintiff may choose to lay venue in any district that satisfies wither provision." *Id.*

This Court has recognized that the location of harm is a relevant consideration in tort cases, and has upheld venue in a "tort-like" action where one of the harms was felt in the district where suit was filed. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075-76 (9th Cir. 2001). Because Plaintiff continued to suffer harm in the Eastern District of California prior to filing and during the pendency of this lawsuit, venue was proper there, and the district court erred in holding to the contrary. This Court should reverse the district court's judgment, and remand with instructions to transfer the case back to the Eastern District of California.

III.    The Magistrate Judge Lacked Jurisdiction to Change Venue.

No party had consented to the Magistrate Judge's jurisdiction at the time he transferred the case to Arizona. See ER 43. In order for a Magistrate Judge to enter a dispositive order, consent of all parties is required. *Williams v. King*, 875 F.3d 500, 501 (9th Cir. 2017). In determining whether a motion is dispositive or nondispositive, this Court has adopted a functional approach that looks to the motion's effect. *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015).

There is a split in district court authority over whether a motion to change venue is dispositive. Some courts hold that an order transferring venue is

dispositive, in the sense that it terminates activity in the forum, and therefore is beyond the authority of a Magistrate Judge. *Payton v. Saginaw County Jail*, 743 F.Supp.2d 691, 692 (E.D. Mich. 2010) (order was functional equivalent of dismissal). But see *Pavao v. Unified CCR Partners*, 934 F.Supp.2d 1238, 1241 n.1 (S.D. Cal. 2013) (order transferring venue is nondispositive because it does not address the merits of the case).

The approach of the district court in *Payton* is more in keeping with the functional approach adopted by this Court in analyzing whether a motion is dispositive. In the present case, the order transferring venue was in fact the functional equivalent of dismissal, because the Arizona district court determined that Arizona, not California, was the forum state, and denied Plaintiff statutory tolling under California law. This Court should vacate the order changing venue and remand this action to the Eastern District of California for a proper adjudication of venue in this case.

## Conclusion

For these reasons, Plaintiff-Appellant asks the Court to reverse the judgment of the district court and remand for further proceedings.

Dated: June 15, 2018                     Respectfully submitted,

*/S/ Carter C. White*
_____
CARTER C. WHITE
*Attorney for Plaintiff-Appellant, Ramon Dy*

## Statement of Related Cases

Plaintiff-Appellant is not aware of any related cases in this Court.

Dated: June 15, 2018                    Respectfully submitted,

*/S/ Carter C. White*

_____

CARTER C. WHITE
*Attorney for Plaintiff-Appellant, Ramon Dy*

## Certificate of Compliance

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains  4873 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

*/S/ Carter C. White*

_____

CARTER C. WHITE

<u>Certificate of Service</u>

I certify that on June 15, 2018, I electronically filed the above Brief for Appellant. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: June 15, 2018                         ***/S/ Carter C. White***

_____
CARTER C. WHITE

## Statutory Addendum

West's Ann.Cal.Penal Code § 11189

§ 11189. Interstate Corrections Compact; form; content

The Interstate Corrections Compact as set forth in this section is hereby adopted and entered into with all other jurisdictions joining therein. The provisions of the interstate compact are as follows:

## INTERSTATE CORRECTIONS COMPACT

This section may be cited as the Interstate Corrections Compact.

The Interstate Corrections Compact is hereby enacted into law and entered into by this state with any other states legally joining therein in the form substantially as follows:

## INTERSTATE CORRECTIONS COMPACT

### Article I

### Purpose and Policy

The party states, desiring by common action to fully utilize and improve their institutional facilities and provide adequate programs for the confinement, treatment and rehabilitation of various types of offenders, declare that it is the policy of each of the party states to provide such facilities and programs on a basis of cooperation with one another, thereby serving the best interests of such offenders and of society and effecting economies in capital expenditures and operational costs. The purpose of this compact is to provide for the mutual development and execution of such programs of cooperation for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources.

### Article II

### Definitions

As used in this compact, unless the context clearly requires otherwise:

(a) "State" means a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico.

(b) "Sending state" means a state party to this compact in which conviction or court commitment was had.

(c) "Receiving state" means a state party to this compact to which an inmate is sent for confinement other than a state in which conviction or court commitment was had.

(d) "Inmate" means a male or female offender who is committed, under sentence to or confined in a penal or correctional institution.

(e) "Institution" means any penal or correctional facility, including but not limited to a facility for the mentally ill or mentally defective, in which inmates as defined in (d) above may lawfully be confined.

## Article III

## Contracts

(a) Each party state may make one or more contracts with any one or more of the other party states for the confinement of inmates on behalf of a sending state in institutions situated within receiving states. Any such contract shall provide for:

1. Its duration.

2. Payments to be made to the receiving state by the sending state for inmate maintenance, extraordinary medical and dental expenses, and any participation in or receipt by inmates of rehabilitative or correctional services, facilities, programs or treatment not reasonably included as part of normal maintenance.

3. Participation in programs of inmate employment, if any; the disposition or crediting of any payments received by inmates on account thereof; and the crediting of proceeds from or disposal of any products resulting therefrom.

4. Delivery and retaking of inmates.

5. Such other matters as may be necessary and appropriate to fix the obligations, responsibilities and rights of the sending and receiving states.

(b) The terms and provisions of this compact shall be a part of any contract entered

into by the authority of or pursuant thereto, and nothing in any such contract shall be inconsistent therewith.

## Article IV

### Procedures and Rights

(a) Whenever the duly constituted authorities in a state party to this compact, and which has entered into a contract pursuant to Article III, shall decide that confinement in, or transfer of an inmate to, an institution within the territory of another party state is necessary or desirable in order to provide adequate quarters and care or an appropriate program of rehabilitation or treatment, said officials may direct that the confinement be within an institution within the territory of said other party state, the receiving state to act in that regard solely as agent for the sending state.

(b) The appropriate officials of any state party to this compact shall have access, at all reasonable times, to any institution in which it has a contractual right to confine inmates for the purpose of inspecting the facilities thereof and visiting such of its inmates as may be confined in the institution.

(c) Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state; provided that the sending state shall continue to be obligated to such payments as may be required pursuant to the terms of any contract entered into under the terms of Article III.

(d) Each receiving state shall provide regular reports to each sending state on the inmates of that sending state in institutions pursuant to this compact including a conduct record of each inmate and certify said record to the official designated by the sending state, in order that each inmate may have official review of his or her record in determining and altering the disposition of said inmate in accordance with the law which may obtain in the sending state and in order that the same may be a source of information for the sending state.

(e) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined

in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

(f) Any hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state, or of the receiving state if authorized by the sending state. The receiving state shall provide adequate facilities for such hearings as may be conducted by the appropriate officials of a sending state. In the event such hearing or hearings are had before officials of the receiving state, the governing law shall be that of the sending state and a record of the hearing or hearings as prescribed by the sending state shall be made. Said record together with any recommendations of the hearing officials shall be transmitted forthwith to the official or officials before whom the hearing would have been had if it had taken place in the sending state. In any and all proceedings had pursuant to the provisions of this subdivision, the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state.

(g) Any inmate confined pursuant to this compact shall be released within the territory of the sending state unless the inmate, and the sending and receiving states, shall agree upon release in some other place. The sending state shall bear the cost of such return to its territory.

(h) Any inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or his status changed on account of any action or proceeding in which he could have participated if confined in any appropriate institution of the sending state located within such state.

(i) The parent, guardian, trustee, or other person or persons entitled under the laws of the sending state to act for, advise, or otherwise function with respect to any inmate shall not be deprived of or restricted in his exercise of any power in respect of any inmate confined pursuant to the terms of this compact.

# Article V

## Acts Not Reviewable in Receiving State: Extradition

(a) Any decision of the sending state in respect of any matter over which it retains jurisdiction pursuant to this compact shall be conclusive upon and not reviewable within the receiving state, but if at the time the sending state seeks to remove an inmate from an institution in the receiving state there is pending against the inmate within such state any criminal charge or if the inmate is formally accused of having committed within such state a criminal offense, the inmate shall not be returned without the consent of the receiving state until discharged from prosecution or other form of proceeding, imprisonment or detention for such offense. The duly accredited officers of the sending state shall be permitted to transport inmates pursuant to this compact through any and all states party to this compact without interference.

(b) An inmate who escapes from an institution in which he is confined pursuant to this compact shall be deemed a fugitive from the sending state and from the state in which the institution is situated. In the case of an escape to a jurisdiction other than the sending or receiving state, the responsibility for institution of extradition or rendition proceedings shall be that of the sending state, but nothing contained herein shall be construed to prevent or affect the activities of officers and agencies of any jurisdiction directed toward the apprehension and return of an escapee.

# Article VI

## Federal Aid

Any state party to this compact may accept federal aid for use in connection with any institution or program, the use of which is or may be affected by this compact or any contract pursuant hereto and any inmate in a receiving state pursuant to this compact may participate in any such federally aided program or activity for which the sending and receiving states have made contractual provision, provided that if such program or activity is not part of the customary correctional regimen, the express consent of the appropriate official of the sending state shall be required therefor.

## Article VII

## Entry Into Force

This compact shall enter into force and become effective and binding upon the states so acting when it has been enacted into law by any two states. Thereafter, this compact shall enter into force and become effective and binding as to any other of said states upon similar action by such state.

## Article VIII

## Withdrawal and Termination

This compact shall continue in force and remain binding upon a party state until it shall have enacted a statute repealing the same and providing for the sending of formal written notice of withdrawal from the compact to the appropriate officials of all other party states. An actual withdrawal shall not take effect until one year after the notices provided in said statute have been sent. Such withdrawal shall not relieve the withdrawing state from its obligations assumed hereunder prior to the effective date of withdrawal. Before the effective date of withdrawal, a withdrawing state shall remove to its territory, at its own expense, such inmates as it may have confined pursuant to the provisions of this compact.

## Article IX

## Other Arrangements Unaffected

Nothing contained in this compact shall be construed to abrogate or impair any agreement or other arrangement which a party state may have with a nonparty state for the confinement, rehabilitation or treatment of inmates nor to repeal any other laws of a party state authorizing the making of cooperative institutional arrangements.

## Article X

## Construction and Severability

The provisions of this compact shall be liberally construed and shall be severable. If any phrase, clause, sentence or provision of this compact is declared to be contrary to the constitution of any participating state or of the United States or the applicability thereof to any government, agency, person or circumstance is held

invalid, the validity of the remainder of this compact and the applicability thereof to any government, agency, person or circumstance shall not be affected thereby. If this compact shall be held contrary to the constitution of any state participating therein, the compact shall remain in full force and effect as to the remaining states and in full force and effect as to the state affected as to all severable matters.